PMC MARKETING CORP., Debtor.

Noreen Wiscovitch–Rentas, Chapter 7 Trustee, Plaintiff–Appellant,

v.

Villa Blanca VB Plaza LLC, a/k/a Villa Blanca Shopping Center, LLC, Defendant–Appellee.

BAP NO. PR 15–022
Bankruptcy Case No. 09–02048–BKT
Adversary Proceeding No. 12–00071–BKT

United States Bankruptcy Appellate Panel of the First Circuit.

January 19, 2016

Rafael A. González Valiente, Esq., on brief for Plaintiff–Appellant.

Maria Fernanda Velez Pastrana, Esq., on brief for Defendant–Appellee.

Before Feeney, Deasy, and Cary, United States Bankruptcy Appellate Panel Judges.

Feeney, U.S. Bankruptcy Appellate Panel Judge.

Noreen Wiscovitch–Rentas, the plaintiff and chapter 7 trustee (the "Trustee"), appeals from the following bankruptcy court orders relating to her complaint seeking to avoid and recover preferential transfers: (1) the December 2, 2014 order (the "Order") granting the motion for summary judgment filed by the defendant-appellee, Villa Blanca VB Plaza LLC, a/k/a Villa Blanca Shopping Center LLC ("Villa Blanca"), and denying her cross-motion for summary judgment; and (2) the April 10, 2015 order denying reconsideration (the "Denial of Reconsideration"). For the reasons discussed below, we **REVERSE** the Order in part, and **VACATE** and **RE-MAND** in part for further proceedings consistent with this opinion; the appeal of the Denial of Reconsideration is waived.

## BACKGROUND

Villa Blanca is the owner of Villa Blanca Shopping Center in Caguas, Puerto Rico. Pursuant to a certain lease agreement executed in June 1985, the debtor, PMC Marketing Corp. (the "Debtor"), rented commercial space at Villa Blanca Shopping Center, where it conducted business as

"Farmacias El Amal." [1]

On March 18, 2009, the Debtor filed a petition for chapter 11 relief. The bankruptcy court converted the case to chapter 7 on May 20, 2010; the Trustee was appointed the same day. On March 2, 2012, the Trustee filed a single-count complaint against Villa Blanca for "turnover of preferential transfers pursuant to § 547," [2] alleging that the Debtor transferred $20,915.22 to Villa Blanca within 90 days of the petition date. The Trustee further alleged that the challenged transfer: (i) was made for or on account of an antecedent debt; (ii) was made while the Debtor was insolvent; and (iii) enabled Villa Blanca to receive more than it would if the payment had not been made. Accordingly, the Trustee requested judgment against Villa Blanca in the amount of $20,915.22, plus costs, expenses, and attorney's fees.

Villa Blanca answered the complaint, acknowledging that within 90 days of the petition date the Debtor made two rent payments of $10,457.61 each–one on December 16, 2008, and the other on January 13, 2009. Villa Blanca asserted several affirmative defenses, including that the alleged transfers were excepted from avoidance pursuant to § 547(c), because they were made "as part of the regular course of business between the parties, specifical-

ly as payment of the monthly rent for the leased premises...." [3]

Villa Blanca explained in its answer that the "Debtor remained in possession of the [leased] premises at least until July 2011," and that the monthly rent was $10,457.61, due on the first day of each month. Villa Blanca attached as an exhibit to its answer a copy of a "tenant ledger" for Farmacias El Amal for the period from December 16, 2008, through July 1, 2009, which reflected the dates of the two challenged payments.

Following a pretrial scheduling conference conducted on September 5, 2012, the bankruptcy court entered a scheduling order (the "September 2012 Scheduling Order"), which required the completion of discovery within 60 days (November 4, 2012) and the filing of dispositive motions within 30 days thereafter (December 4, 2012). The court set December 19, 2012, as the date for a pretrial hearing. The bankruptcy court docket reflects that neither party filed a dispositive motion by the prescribed deadline. Accordingly, following the December 19, 2012 pretrial conference, the bankruptcy court entered an order (the "December 2012 Order"), whereby it sanctioned both parties for their failure to comply with the September 2012 Scheduling Order or to request relief from it, and set new deadlines in the case. Pursuant to the December 2012 Or-

---

1. The original parties to the lease were Farmacias Moscoso, Inc. and First Caparra Investment Corporation, the predecessors in interest to the Debtor and Villa Blanca, respectively.

2. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" shall be to the Federal Rules of Civil Procedure.

3. Other defenses included that: the Trustee was negligent in commencing the subject adversary proceeding almost two years after the conversion of the Debtor's case to chapter 7; the complaint was "totally or partially pr[o]scribed"; the claims set forth in the complaint were "frivolous"; and the allegations "lack[ed] sufficient information and specificity." However, the focus of the litigation ultimately became the "ordinary course of business defense" and Villa Blanca did not pursue the remaining defenses.

der, the court granted 15 days for the completion of interrogatories (January 3, 2013), required the filing of Villa Blanca's motion for summary judgment within 15 days of the completion of interrogatories (January 18, 2013), and directed the filing of the Trustee's opposition within 30 days thereafter (February 17, 2013). Additionally, the court scheduled a pretrial conference for April 24, 2013.

On January 18, 2013, the deadline for the filing of its motion for summary judgment, Villa Blanca filed a non-emergency motion requesting a 15–day extension of time. The bankruptcy court's docket reflects that the bankruptcy court did not rule on Villa Blanca's motion for an extension of time and that Villa Blanca did not renew its request. Nonetheless, Villa Blanca, apparently having learned little from the bankruptcy court's earlier imposition of sanctions, filed a motion for summary judgment (the "Summary Judgment Motion") on February 12, 2013, 25 days after the deadline established in the December 2012 Order. The Trustee did not object to the late filing of the Summary Judgment Motion, and the bankruptcy court appears to have disregarded the lateness of the Summary Judgment Motion.

In the Summary Judgment Motion, Villa Blanca disputed the amount of the Trustee's claim and acknowledged that the January 13, 2009 payment fell within the 90–day preference period. Villa Blanca reiterated, however, that the transfer could "not be avoided based on [§ ] 547(c)."

Villa Blanca's argument presented in the accompanying memorandum of law was three-pronged: (1) the Trustee lacked sufficient evidence to prove her case; (2) only one of the challenged payments, namely the January 13, 2009 payment, fell within the 90–day preference period; and (3) "the payments made by [the] Debtor ... were in the ordinary course of business by a tenant to the landlord." The thrust of Villa Blanca's "ordinary course of business" argument was that the challenged transfer was a late rental payment and, as such, could be considered ordinary because it was "within the pattern of payments between the parties." Villa Blanca elaborated that the "Debtor's payment history ... reflected repeated late payments" and that Villa Blanca accepted those payments, "because they were made with the promise ... to clear out the total amount owed." As evidence of the Debtor's payment history, Villa Blanca attached to the memorandum of law another Farmacias El Amal payment ledger, this one covering the period from May 1, 1997, to July 31, 2011, and totaling 32 pages.[4] Additionally, Villa Blanca argued, without elaboration, that in "the present case the five requirements established by [§ ] 547(b) ... have not been met...."

Subsequently, on March 5, 2013, the Trustee filed a motion requesting a five-day extension of time to oppose the Summary Judgment Motion (although by that time, the deadlines set forth in the December 2012 Order had lapsed by virtue of Villa Blanca's tardy filing of the Motion for Summary Judgment). The bankruptcy court granted the Trustee's motion and entered an order which required the filing of her opposition by March 11, 2013.

---

4. Villa Blanca also attached a copy of the lease agreement, as well as the Sworn Statement of Jose Aguilu Reyes, director of the Collection Department of Commercial Centers Management, the administrative agent to Villa Blanca. Aguilu Reyes averred that: (1) the "Debtor was in default of its rent payments, but it kept making regular rent payments to [Villa Blanca], in order to update the account and to avoid an eviction"; and (2) in "December 16, 2008 and in January 13, 2009, Debtor made two rent payments to [Villa Blanca], each in the amount of $10,457.61."

On March 7, 2013, the Trustee timely filed an opposition to the Summary Judgment Motion, which included a cross-motion for summary judgment (collectively the "Cross-motion"). In it, she challenged Villa Blanca's ordinary course of business defense, but conceded that the Debtor had made only a single, preferential payment for $10,457.61. As evidence of that payment, she pointed to a $10,457.61 check dated October 31, 2008, from Farmacias El Amal made payable to Villa Blanca, which she contended was deposited on January 14, 2009 (the "January 2009 Payment"),[5] and met all of the requirements of § 547.

The Trustee's challenge of Villa Blanca's "ordinary course of business" defense in the Cross-motion was two-fold. First, she argued that the defense must fail because Villa Blanca neither alleged nor demonstrated that the January 2009 Payment was made in accordance with the ordinary business terms of the industry. Second, she asserted that the payment was inconsistent with the terms of the contract between the parties, and, therefore, did not satisfy the ordinary course of business exception. In support of her claim that the January 2009 Payment was outside the ordinary course of business between the parties, she argued that a review of the payments made by the Debtor during the 18–month period preceding the January 2009 Payment revealed that there was "no set [payment] pattern" and that the Debtor "was making late payments and accumulating arrears." The Trustee elaborated that in some months the Debtor made no payments, while in others it made two. In furtherance of her argument that the challenged payment was inconsistent with the ordinary business terms of the industry, she argued that Villa Blanca provided no evidence that the industry permitted

late payments and the accumulation of arrears. Accordingly, the Trustee asked the bankruptcy court to deny the Summary Judgment Motion and grant the Cross-motion.

Contemporaneously with the Cross-motion, the Trustee filed her counter-statement of facts (the "Counter-statement"), in which she chronicled the Debtor's payment history from September 2007 through January 2009 to demonstrate there was no set payment pattern:

[The] Debtor made payments in the following manner in the 18 months prior to the last payment: 1 payment [o]n September 27, 07; 1 payment [o]n October 29, 07; *NO PAYMENT in November of .07*[;] 1 payment [o]n December 3, 07; 1 payment [o]n January 8, 08; 1 payment [o]n February 19, 08; 1 payment [o]n March 17, 08; 1 payment [o]n April 18, 08; *2 payments [o]n May 29, 08*; 1 payment [o]n June 16, 08; 1 payment [o]n July 22, 08; *NO PAYMENT in August of 08*; 1 payment [o]n September 19, 08; 1 payment[ ][o]n October 16, 08; *NO PAYMENT in November of 08*; 1 payment [o]n December 16, 08; and 1 payment [o]n January 13, 09.

Subsequently, on April 12, 2013, the Trustee filed an assented-to motion, requesting the continuance of the April 24, 2013 pretrial hearing, "pending disposition of the motion for summary judgment." Accordingly, on April 15, 2013, the bankruptcy court entered an order, "vacat[ing] and set[ting] aside" [sic] the April 24, 2013 pretrial hearing.

Also on April 15, 2013, 39 days after filing the original Cross-motion, the Trustee filed an amended opposition and cross-motion for summary judgment (collectively, the "Amended Cross-motion"). The

---

**5.** Although Villa Blanca claims that the payment was made on January 13, 2009, this discrepancy does not affect the outcome of this appeal.

Trustee modified her original argument by, inter alia, deleting the discussion regarding the ordinary course of business in the industry; specifying that the January 2009 Payment was on account of the rent due for the month of October 2008; and adding an analysis of the degree of lateness of the Debtor's payments during the preference period, which showed the average lateness during the pre-preference period was 64.3 days and the median was 59 days, while during the preference period the average lateness and the median were both 105 days. In support of the Amended Cross-motion, the Trustee filed an amended counter-statement of relevant facts (the "Amended Counter-statement"), in which she reiterated her analysis of the data concerning the Debtor's payment history. Based on the foregoing, the Trustee again asked the court to deny the Summary Judgment Motion and to enter judgment in her favor.

The bankruptcy court's docket reflects that approximately 19 months passed without a response from Villa Blanca or any action by the court with respect to the Cross-motion or the Amended Cross-motion.[6] The Trustee, therefore, filed a motion seeking an order granting her unopposed summary judgment request on November 17, 2014. Villa Blanca still did not respond, nor did the court impose any deadlines or schedule further proceedings.

On December 2, 2014, the bankruptcy court entered the Order without a hearing. As a preliminary matter, the court struck the Amended Cross-motion and the Amended Counter-statement from the record, because they "were filed without leave of court, forty ... days after [the Trustee's] initial response." After noting that

the case "hinge[d] on the ordinary course of business defense," the court ruled:

[T]he Debtor's Tenant's Ledger reveal[ed] an inconsistent payment date and thus demonstrate[d] that the lessor/lessee payment relationship between the Debtor and [Villa Blanca] seemed to be a rather flexible one. Therefore, [Villa Blanca] has met the burden for both § 547(c)(2) and § 547(c)(2)(A).

The court rejected the Trustee's argument that Villa Blanca "fail[ed] to present any evidence to justify § 547(c)(2)(B)," adding that the "argument would have had merit had [C]ongress not changed the language of § 547(c)(2)." Accordingly, the court concluded:

[T]here are no genuine issues of material fact and thus a trial is unnecessary. With no genuine issues of material facts at hand, this Court will not address whether $10,457.61 or $20,915.22 could be avoided by the Trustee since the Defendant has established the standard of ordinary course of business exception. Summarily, Plaintiff failed to present sufficient evidence to demonstrate that there is a genuine issue of fact in dispute for a trial, or that summary judgment should be granted in her favor.

WHEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment shall be, and it hereby is, GRANTED. The adversary case is dismissed. Clerk to enter judgment.

On the same date, the bankruptcy court entered a Judgment, granting the Summary Judgment Motion, denying the Cross-motion, and dismissing the adversary proceeding.

The day after the bankruptcy court entered the Order, Villa Blanca filed a

---

6. See TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589, 591 n. 1 (1st Cir. BAP 2014) (stating "we may take judicial notice of the bankruptcy court's docket") (citation omitted).

belated motion requesting leave to file a response to the Amended Cross-motion together with its proposed response, acknowledging that it "did not timely file its reply to [the Trustee's] motions due to inadvertence." The bankruptcy court denied the request for leave to file a response as moot.

On December 12, 2014, the Trustee filed a motion for reconsideration (the "Reconsideration Motion"), arguing that the court erred in granting the Summary Judgment Motion because Villa Blanca failed "to prove the existence of a set pattern of late payments...." She elaborated: "To allow late payments to be considered ordinary where there is no established pattern of payment would be tantamount to allowing the exception to swallow the rule." Although the Trustee further argued that the bankruptcy court should have permitted her to amend the Cross-motion pursuant to Rule 15, she maintained that she should prevail even based on her original submissions, as they sufficiently established the Debtor's payment history.

On January 8, 2015, Villa Blanca filed an opposition to the Reconsideration Motion, insisting that it was a "normal practice" for Villa Blanca to make late rent payments and for the Debtor to accept them without objection. Accordingly, it asked the court to deny the Reconsideration Motion.

Thereafter, the court entered the Denial of Reconsideration, explicitly adopting Villa Blanca's argument in its entirety. By way of further explanation, the court added:

> The Debtor's Tenant's Ledger reveals an inconsistent payment date and thus demonstrates that the lessor/lessee payment relationship between the Debtor and the Defendant seemed to be a rather flexible one. Therefore, [the] Defen-

dant has met the burden for both § 547(c)(2) and § 547(c)(2)(A).

This appeal followed.

## SCOPE OF REVIEW

The language of the notice of appeal requires us to address the scope of our review. The Trustee mistakenly identified the order granting summary judgment as docket no. 50 in the notice of appeal, although that order is actually entered as docket no. 42. Nonetheless, the Trustee's intent to appeal the order granting summary judgment is abundantly clear in her brief. Furthermore, Villa Blanca has likewise briefed its position concerning the grant of summary judgment, thereby dispelling any concern regarding possible prejudice to Villa Blanca by including this order within the scope of our review. Accordingly, we review the grant of summary judgment. *See Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 8 (1st Cir.2005) (stating "when determining what is actually being appealed," the First Circuit has "been liberal," and "briefs as well as [the] notice of appeal can be consulted during this process") (citation omitted).

Despite the Trustee's silence regarding the bankruptcy court's decision to deny the Cross-motion and to strike the Amended Cross-motion in her notice of appeal (both of which decisions are encompassed in the Order entered as docket no. 42), we extend our review to those aspects of the Order, because they have been briefed by both parties. Lastly, although the Trustee listed the Denial of Reconsideration in her notice of appeal, she ignores it in her statement of issues and in her brief, except for a single, cursory reference. Accordingly, we consider the appeal of the Denial of Reconsideration waived. *See Tower v. Leslie–Brown*, 326 F.3d 290, 299 (1st Cir. 2003) (explaining failure to brief an issue constitutes waiver) (citations omitted); *see also Nikijuluw v. Gonzales*, 427 F.3d 115,

120 n. 3 (1st Cir.2005) (stating it is "well established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citations omitted) (internal quotations omitted).

## POSITIONS OF THE PARTIES

### A. The Trustee

In support of her request for reversal of the Order, the Trustee argues that Villa Blanca failed to establish that the debt was incurred in the ordinary course of business in the industry. Because the Trustee raises this issue for the first time on appeal, she has waived it. *See Abdallah v. Bain Capital, LLC,* 752 F.3d 114, 120 (1st Cir. 2014) (citations omitted).

The remaining issues on appeal relate to whether the challenged transfer was made in the ordinary course of business between the parties. The Trustee reiterates that the bankruptcy court should have considered the Amended Cross-motion, although it was "unauthorized," because: (1) it merely provided the court with additional analysis, which Villa Blanca should have furnished; and (2) there is no rule which precludes the amendment of dispositive motions without the court's permission. And although the court struck the Amended Cross-motion with its "average lateness" analysis, the Trustee nonetheless incorporates this analysis in her brief, arguing that, prior to the preference period, the average lateness was 74.3 days and the median lateness was 59 days, while during the preference period the average lateness was 105 days and the median lateness was 105 days. "This payment pattern does not fit a defense of ordinary course of business," the Trustee argues.

### B. Villa Blanca

Villa Blanca counters, first, by challenging the Trustee's assertion that the bankruptcy court erred in not considering the Amended Cross-motion, arguing that the Trustee failed to provide any legal authority for this contention. Villa Blanca then asserts that it satisfied its burden of proof with respect to the ordinary course of business defense. In order to demonstrate that the January 2009 Payment was within the ordinary course of business between the parties, Villa Blanca suggests that the amount of the payment was not unusual, arguing for the first time that the payment was "the exact same amount of the monthly rent charges invoiced to [the] Debtor...." We need not dwell on this argument, because it is made for the first time on appeal. *See Abdallah v. Bain Capital LLC, supra.*

Villa Blanca continues to maintain that the lateness of the challenged payment was also consistent with the parties' ordinary course of dealings, arguing: "Late payments are considered to be made in 'ordinary course of business' for purposes of exception to avoidance of preferential transfer if it is [sic] made within pattern [sic] of payments between the parties of when the parties adopt them as their normal practice." Villa Blanca offers no analysis of that pattern, however, instead choosing to rely on the bankruptcy court's characterization of the Debtor's "payment relationship" with Villa Blanca as "a flexible one." In fact, Villa Blanca rejects the notion that it was required to establish a "baseline of dealings," arguing instead that its defense was sufficiently supported by the Debtor's ledgers and the lease agreement.

Although Villa Blanca failed to raise the "contemporaneous exchange for value" defense in its answer, in its appellate brief (as in the memorandum of law it filed in

support of the Summary Judgment Motion), it argues without elaboration that rent payments "qualify as a contemporaneous exchange for value and made in the ordinary course of business, and as such, could not be voided by the Trustee." Because the "contemporaneous exchange for value" defense is both untimely and unexplained, we consider it waived. *See* Fed. R.Civ.P. 12(b) and 12(h) (specifying when defenses must be raised); *see also Nikijuluw v. Gonzales, supra* (explaining failure to brief an issue in more than perfunctory manner results in waiver).

### *JURISDICTION*

■ A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (citation and internal quotations omitted). The Panel has jurisdiction to hear appeals from a final judgment of the bankruptcy court. 28 U.S.C. § 158(a)(1). "An order granting summary judgment, where no counts remain, is a final order."[7] *Wiscovitch–Rentas v. Molina González (In re Morales García)*, 507 B.R. 32, 41 (1st Cir. BAP 2014) (citation omitted) (internal quotations omitted). Therefore, we have jurisdiction.

### *STANDARD OF REVIEW*

■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *See Lessard v. Wilton–Lyndeborough Coop. Sch. Dist.*, 592 F.3d 267, 269 (1st Cir.2010). We review a grant of summary judgment de novo. *Redondo Constr. Corp. v. Izquierdo*, 746 F.3d 21, 26 (1st Cir.2014) (citation omitted). De novo review means that "the appellate court is not bound by the bankruptcy court's view of the law." *Harrington v. Donahue (In re Donahue)*, BAP No. NH 11–026, 2011 WL 6737074, at *8 (1st Cir. BAP Dec. 20, 2011) (citation omitted) (internal quotations omitted). "On an appeal from cross-motions for summary judgment, the standard of review does not change...." *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir.2013) (citation omitted).

■ We review the bankruptcy court's decision to strike for abuse of discretion. *Dodi v. Putnam Cos.*, No. 95–2266, 1996 WL 489998, at *2 (1st Cir. Aug. 28, 1996) (citations omitted); *see also Am. Gen. Life Ins. v. Bagley*, No. 2:13–cv–00089–RJS, 2013 WL 5916824, at *3 (D.Utah Nov. 4, 2013) (stating "a ruling on a motion to strike is reviewed for abuse of discretion") (citation omitted). "Apart

---

**7.** While an order denying summary judgment is typically an interlocutory order, here it is clear from the bankruptcy court's instruction to dismiss the subject adversary proceeding that the denial of the Cross-motion, in combination with the decision striking the Amended Cross-motion and granting the Summary Judgment Motion, was the court's final act in the matter. *See Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 307 (9th Cir.1990) (holding that a "disposition is final if it contains 'a *complete* act of adjudication,' that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter") (quoting *Unit-* ed States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 234, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958); *Maddox v. Black, Raber–Kief & Assocs.*, 303 F.2d 910, 911 (9th Cir.1962)) (footnote omitted). We note, further, that an appeal from a final judgment, such as the appeal from the order granting the Summary Judgment Motion here, subsumes all rulings producing the judgment. *See Boyd v. Kmart Corp.*, No. 96–7065, 1997 WL 158183, at *6 (10th Cir. Apr. 2, 1997) (citation omitted). Accordingly, there is no doubt that we have jurisdiction over the decision striking the Amended Cross-motion and denying the Cross-motion.

from an error of law, an abuse of discretion occurs when the ... court considers improper criteria, ignores criteria that deserve significant weight, or gauges only the appropriate criteria but makes a clear error of judgment in assaying them." *Rosario–Urdaz v. Rivera–Hernandez*, 350 F.3d 219, 221 (1st Cir.2003) (citation omitted).

## DISCUSSION

### I. The Summary Judgment Standard

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 762 (1st Cir.1994); *see also Soto–Rios v. Banco Popular de P.R.*, 662 F.3d 112, 115 (1st Cir.2011). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." *In re Varrasso*, 37 F.3d at 762 (citations omitted); *see also Soto–Rios v. Banco Popular de P.R.*, 662 F.3d at 115; Fed. R. Bankr.P. 7056; Fed. R.Civ.P. 56. "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso*, 37 F.3d at 763 (citation omitted). "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver an absence of evidence to support the nonmoving party's case." *Id.* at 763 n. 1 (citation omitted) (internal quotations omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." *Id.* (citations omitted) (internal quotations omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As the Supreme Court explained, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

Where, as here, there are cross-motions for summary judgment, "we employ the same standard of review, but view each motion separately, drawing all inferences in favor of the nonmoving party." *Fadili v. Deutsche Bank Nat'l Trust Co.*, 772 F.3d 951, 953 (1st Cir.2014) (citation omitted).

### II. Preferences and the § 547(c)(2) Defense

#### A. Preferential Transfers in General

The U.S. Court of Appeals for the First Circuit has stated:

> In general, a Chapter 7 trustee, subject to the defenses set out in subsection 547(c), "may avoid any transfer of an interest of the debtor in property" made (1) to a creditor, (2) on account of an antecedent debt, (3) while the debtor was insolvent, (4) during the 90–day period preceding the filing of the petition, which (5) allowed such creditor to receive more than it would have under Chapter 7.

*Advanced Testing Techs., Inc. v. Desmond (In re Computer Eng'g Assocs., Inc.)*, 337 F.3d 38, 45 (1st Cir.2003) (quoting 11 U.S.C. § 547(b)). Such transfers are "preferential transfers." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 360 n. 1,

126 S.Ct. 990, 163 L.Ed.2d 945 (2006) (citing 11 U.S.C. § 547(b)); *see also Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),* 132 F.3d 104, 109 (1st Cir.1997) (citing 11 U.S.C. § 547(b)). "In unofficial and general terms, a preference is a transfer of the debtor's property on the eve of bankruptcy to satisfy an old debt." *Bogdanov v. Avnet, Inc.,* No. 10–CV–543–SM, 2011 WL 4625698, at *2 (D.N.H. Sept. 30, 2011) (citation omitted) (internal quotations omitted).

 "If a preference is avoided, 'the trustee may recover, for the benefit of the estate, the property transferred....'" *Bogdanov,* 2011 WL 4625698, at *3 (quoting 11 U.S.C. § 550(a)). "Avoiding preferences generally puts creditors on equal footing with each other for the purpose of distributing the debtor's estate, and discourages 'creditors from hastily forcing troubled businesses into bankruptcy.'" *Id.* (quoting *Lawson v. Ford Motor Co.,* 78 F.3d 30, 40 (2d Cir.1996)). "The trustee carries the burden of proof on all elements of a preference listed in § 547(b)." *Phoenix Rest. Grp., Inc. v. Proficient Food Co. (In re Phoenix Rest. Grp., Inc.),* 373 B.R. 541, 546 (M.D.Tenn.2007) (citing 11 U.S.C. § 547(g)).

## B. The Ordinary Course of Business Defense

 "[T]he creditor may escape preference liability by proving that it falls within one of the exceptions set forth in § 547(c)." *Cox v. Momar, Inc. (In re Affiliated Foods Sw. Inc.),* 750 F.3d 714, 717 (8th Cir.2014) (citation omitted) (internal quotations omitted). The preference defendant carries the burden of proof on each defense. 11 U.S.C. § 547(g). "[T]he exceptions enumerated in [§ ] 547(c) [are] designed to rescue from attack in bankruptcy those kinds of transactions, otherwise fitting the definition of a preference,

that are essential to commercial reality and do not offend the purposes of preference law, or that benefit the ongoing business by helping to keep the potential bankrupt afloat." *Official Comm. of Unsecured Creditors of Maxwell Newspapers, Inc. v. Travelers Indem. Co. (In re Maxwell Newspapers, Inc.),* 192 B.R. 633, 635 (Bankr.S.D.N.Y.1996) (citation omitted) (internal quotations omitted).

This appeal involves the "often-litigated exception in § 547(c)(2) for transfers in the ordinary course of business." *In re Affiliated Foods,* 750 F.3d at 717. Section 547(c)(2) saves otherwise preferential transfers:

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, *and* such transfer was—

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; *or*

(B) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (emphasis added).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") "significantly amended the ordinary course of business exception in § 547(c)(2)." *In re Affiliated Foods,* 750 F.3d at 717 (citation omitted). "The prior version required a creditor seeking to avoid preference liability to prove three elements: (i) that the preferential transfer paid a debt incurred in the ordinary course of the debtor's business; (ii) that it was 'made in the ordinary course of business ... of the debtor and the transferee'; *and* (iii) that it was made 'according to ordinary business terms.'" *Id.* (citations omitted). "While the preferred creditor must still prove that the *debt* was incurred in

the ordinary course of the debtor's business," under amended § 547(c)(2), "the remainder of the test is now disjunctive." *Id.* at 718 (footnote omitted). The creditor must now "prove that the *transfer* either was made in the 'ordinary course of [its] business' with the debtor, *or* that it was made 'according to ordinary business terms.' "[8] *Id.* The former requirement is referred to as the "subjective test," articulated in § 547(c)(2)(A); the latter is known as the "objective test," set forth in § 547(c)(2)(B). *Davis v. R.A. Brooks Trucking, Co. (In re Quebecor World (USA), Inc.)*, 491 B.R. 379, 385 (Bankr. S.D.N.Y.2013) (citation omitted) (internal quotations omitted). This appeal involves the application of the subjective test.

### 1. Consistency and the Baseline

■ There is " 'no precise legal test' to determine whether a preferential transfer was made in the ordinary course of business between the debtor and the creditor[.]" *In re Affiliated Foods*, 750 F.3d at 719 (citation omitted); *see also Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 317 (5th Cir.1998). Rather, the court must engage in a "peculiarly factual analysis."[9] *In re Affiliated Foods*, 750 F.3d at 719 (citation omitted) (internal quotations omitted); *accord Official Plan Comm. v. Expeditors Int'l of Wash., Inc. (In re Gateway Pac. Corp.)*, 153 F.3d 915, 917 (8th Cir.1998);

*Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir. 1989); *First Software Corp. v. Curtis Mfg. Co. (In re First Software Corp.)*, 81 B.R. 211, 213 (Bankr.D.Mass.1988)).

■ "[T]he hallmark of a payment in the ordinary course is consistency with prior practice...." *In re Healthco*, 132 F.3d at 110 (citation omitted); *see also In re ACP Ameri–Tech*, 2012 WL 481582, at *8 ("The analysis centers upon whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent.") (citation omitted) (internal quotations omitted); *Gasmark*, 158 F.3d at 317 (" '[T]he analysis focuses on the time within which the debtor ordinarily paid the creditor[ ] ... and whether the timing of the payments during the 90–day period reflected 'some consistency' with that practice.' ") (quoting *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 498 (8th Cir.1991)); *Vacqueria Tres Monjitas, Inc. v. Wiscovitch–Rentas (In re PMC Mktg., Corp.)*, 526 B.R. 441, 446 (D.P.R.2015) ("[T]he controlling factor is whether the transactions between the debtor and the creditor both before and during the 90–day period were consistent.") (citations omitted) (internal quotations omitted). Where there were "virtually no significant similarities between the challenged payment and the antecedent course of dealings between the parties,"

---

8. "Once BAPCPA amended the ordinary course defense in § 547(c)(2) to read the elements of the defense in the alternative, rather than the conjunctive, the portion of those opinions requiring satisfaction of both the subjective and objective tests is no longer applicable." *Goldberg v. Graybar Electric Co. (In re ACP Ameri–Tech Acquisition, LLC)*, Adv. No. 10–9029, 2012 WL 481582, at *7 n. 21 (Bankr.E.D.Tex. Feb. 14, 2012) (citation omitted).

9. For this reason, some courts have held that " 'the general rule is that the ordinary course

of business defense cannot be determined on a motion for summary judgment.' " *In re ACP Ameri–Tech*, 2012 WL 481582, at *7 (quoting *Ice Cream Liquidation, Inc. v. Niagara Mohawk Power Corp. (In re Ice Cream Liquidation, Inc.)*, 320 B.R. 242, 250 (Bankr. D.Conn.2005)); *see also Moran v. Hong Kong & Shanghai Banking Corp. (In re Deltacorp., Inc.)*, 179 B.R. 773, 781 (Bankr.S.D.N.Y.1995) (stating "it is the rare case of this sort which can be decided on a motion for summary judgment, given the peculiarly factual nature of the inquiry.") (citation omitted).

the First Circuit refused to apply the § 547(c)(2) defense. *In re Healthco*, 132 F.3d at 109–10.

■■■ The "consistency" analysis requires the preference defendant to establish a "'baseline of dealing' between the parties over a historical period," *In re ACP Ameri–Tech*, 2012 WL 481582, at *8 (citation omitted), "which should be 'well before' the preference period." *In re PMC Mktg., Corp.*, 526 B.R. at 446 (quoting *In re Tolona Pizza Prods. Corp.*, 3 F.3d 1029, 1032 (7th Cir.1993)); *see also DeGiacomo v. Raymond C. Green, Inc. (In re Inofin Inc.)*, 512 B.R. 19, 102 (Bankr.D.Mass.2014) (stating "a defendant must establish a baseline of dealings between the parties to enable the court to compare the payment practices during the preference period with the prior course of dealing") (citations omitted) (internal quotations omitted). The Ninth Circuit summarized the factual analysis required by § 547(c)(2) as follows: "First, the creditor must show a baseline of past practices between itself and the debtor." *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 790 (9th Cir.2007) (citations omitted). Second, "the creditor must show that the relevant payments were 'ordinary in relation to [these] past practices.'" *Id.* (citation omitted).

"To make a sound comparison, '[n]umerous decisions support the view that the historical baseline should be based on a time frame when the debtor was financially healthy.'" [10] *In re Affiliated Foods*, 750 F.3d at 720 (adopting two-year period) (quoting *In re Quebecor*, 491 B.R. at 387) (also adopting two-year look back period

instead of one-year, because the longer period "more accurately reflect[ed] the parties' ordinary course of dealings during the period when the Debtor was in better financial health"); *see also Lovett*, 931 F.2d at 498 (holding that the appropriate look-back period was 12 months, because "[i]t reflected the normal operations under the [parties']. agreement").

■■■ The First Circuit instructs that the factors that "bear upon whether a particular transfer warrants protection under [§ ] 547(c)(2) . . . include the amount transferred, the timing of the payment, the historic course of dealings between the debtor and the transferee, and the circumstances under which the transfer was effected." *In re Healthco*, 132 F.3d at 109 (citations omitted); *see also Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, Adv. No. 08–1690(SMB), 2010 WL 4622449, at *3 (Bankr.S.D.N.Y. Nov. 4, 2010) (stating "[t]he relevant comparisons [in determining ordinary course] relate to the amount of the payments, the timeliness of the payments, the existence of any unusual debt collection practices and the form of, and the circumstances surrounding, the payments") (citations omitted).

### 2. Impact of "Lateness" Factor

■■■ Among the above-cited factors, "[l]ate payment of a debt has been considered particularly important in determining whether the payment is ordinary." *Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 244 (6th Cir.1992) (citation omitted). "Late payments do not preclude a finding that the payment oc-

---

**10.** *But see Brown v. Shell Can. Ltd. (In re Tenn. Chem. Co.)*, 112 F.3d 234, 237 (6th Cir.1997) (stating "[g]enerally, the *entire* course of dealing is considered") (emphasis added) (citation omitted). The decision in *Tenn. Chem. Co.* does not seem to be the prevailing view, however. The First Circuit has not addressed the length of time that should be examined in order to establish the ordinary course of dealings between the parties.

curred during the ordinary course of business, . . . ." *Burtch v. Detroit Forming, Inc. (In re Archway Cookies LLC),* 435 B.R. 234, 242 (Bankr.D.Del.2010) (citation omitted) (footnote omitted). Although "[u]ntimely payments are more likely to be considered outside the ordinary course . . . a creditor may present evidence to rebut the presumption that a particular late payment was out of the ordinary." *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.),* 567 F.3d 1291, 1298 (11th Cir.2009) (citations omitted) (internal quotations omitted). "[I]n fact, a pattern of late payments can establish an ordinary course between the parties." *In re Archway Cookies,* 435 B.R. at 242 (citation omitted) (footnote omitted); *see also Lovett,* 931 F.2d at 498 ("Normally, if late payments were the standard course of dealing between the parties, they shall be considered as within the ordinary course of business under § 547(c)(2).") (citations omitted) (internal quotations omitted).

▆▆▆ " 'To determine whether a late payment may still be considered ordinary between the parties, a court will normally compare the degree of lateness of each of the alleged preferences with the pattern of payments before the preference period to see if the alleged preferences fall within that pattern.' " *In re Quebecor,* 491 B.R. at 386 (quoting 5 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶504.04[2][ii], at 547-55 (16th ed.2010)). As one bankruptcy court aptly observed, "[t]he starting point—and often the ending point—involves consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average lateness' computation theory." *In re M. Fabrikant,* 2010 WL 4622449, at *3

(citation omitted) (footnote omitted); *see also Lovett,* 931 F.2d at 498; *Unsecured Creditors Comm. of Sparrer Sausage Co. v. Jason's Food, Inc. (In re Sparrer Sausage Co.),* Adv. No. 13 AP 01195, 2014 WL 4258103, at *2 (Bankr.N.D.Ill. Aug. 27, 2014) (citation omitted); *In re Quebecor,* 491 B.R. at 386; *Pettie v. Hamilton (In re Park at Briarcliff, Inc.),* Adv. No. 12-5069, 2013 WL 8214715, at *6 (Bankr.N.D.Ga. Aug. 6, 2013) (citations omitted); *Torch Liquidation Trust v. A & B Bolt & Supply, Inc. (In re Torch Offshore, Inc.),* Adv. No. 07-01001, 2009 WL 2849028, at *3 (Bankr.E.D.La. Feb. 19, 2009); *Hassett v. Altai, Inc. (In re CIS Corp.),* 214 B.R. 108, 120-21 (Bankr.S.D.N.Y.1997) (all considering average lateness).[11]

Applying this approach in *Lovett, supra,* the Eighth Circuit ruled that certain late payments were made in the ordinary course of business, reasoning as follows:

> Although it appears that payment generally was made somewhat sooner in the 90-day period than during the preceding 12 months, the difference was not sufficiently significant to show that the payments during the 90-day period did not follow the ordinary course of business reflected in the prior 12 months. In both periods, there were substantial and significant delays in paying the bulk of the invoices, and this fact is dispositive even though the percent paid within 45 days in the 90-day period was considerably greater than in the prior 12-month period (54.9 percent versus 21.2 percent, respectively). The ordinary course of business between International and St. Johnsbury in paying the invoices was that International significantly and substantially delayed considerably beyond the 30 days specified in the contract, and

---

11. In fact, in *Quebecor,* 491 B.R. at 387, the bankruptcy court considered a weighted average of the payments made during the baseline period—an analysis that takes into account the relative invoice amount when determining the average.

that this practice continued during the 90–day period. This case ... thus is one where the parties to a contract adopt an extra-contractual practice that becomes the ordinary course of business between them.

931 F.2d at 498–99 (citation omitted) (internal quotations omitted). Conversely, in *In re Torch Offshore, Inc.*, another court found that late payments were not in the ordinary course by applying an average lateness analysis:

The court finds that the evidence shows that between the parties, the payments made during the preference period were not made in the ordinary course of business between the parties when those payments are compared with the transactions between the parties that occurred before the preference period. Although it is only one factor, the extreme difference in the time period for payment by the debtor, from an average of 80.6 days prior to the preference period and an average of 172.25 during the preference period, shows a significant enough difference in payment activity to outweigh the other factors.

2009 WL 2849028, at *3 (citation omitted).

Other courts have also considered the *range* of lateness. *See, e.g., In re Affiliated Foods*, 750 F.3d at 720–21; *Ciesla v. Harney Mgmt. Partners, LLC (In re KLN Steel Prods. Co.)*, 506 B.R. 461, 472–73 (Bankr.W.D.Tex.2014). The "total range" method "considers a transfer during the preference period to be ordinary if it is paid within the minimum and maximum days in the range of all payments during

the historical period." *Pereira v. United Parcel Serv. of Am., Inc. (In re Waterford Wedgewood USA, Inc.)*, 508 B.R. 821, 835 (Bankr.S.D.N.Y.2014) (citation omitted).[12] Thus, for example, in *Affiliated Foods*, the Eighth Circuit specifically ruled:

[W]ith a historical average of 35 days between invoice and payment and a range of 13 to 49 days, we cannot conclude that the district court clearly erred in finding that the preferential transfer at issue, a payment made to a regular supplier 26 days after the supplier's invoice, was made "in the ordinary course of business" between debtor ... and transferee....

750 F.3d at 721.

Adopting yet another approach to analyzing the data concerning the parties' payment practices during the preference and pre-preference period, the Fifth Circuit in *G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co.)*, 439 F.3d 233, 239–40 (5th Cir.2006), took into account the median lateness in addition to the average. This analysis revealed that "the average time between invoice and payment during the pre-preference period was twenty-one days and the median was seventeen days. In the preference period, however, the average jumped to 38.67 days, with a median of 37." *Id.* at 240. The court concluded that a payment which discharged invoices which were an average of 25.22 days old satisfied the subjective prong of the ordinary course analysis, while a payment which discharged invoices 35.37 days old on average did not.[13] *Id.*

12. Some courts have criticized the " 'total range" method because it "impermissibly expand[s] the ranges of ordinary transactions ... [and] captures outlying payments that skew the analysis of what is ordinary.' " *Id.* (citing *In re Quebecor*, 491 B.R. at 387–88) (citation omitted).

13. *But see In re ACP Ameri–Tech*, where the bankruptcy court not only refused to consider the ordinary course of business defense on summary judgment, but it also declined to conduct any form of "days to pay" analysis, cautioning:

While the data sheds helpful light on that determination, the defense cannot be re-

While a review of relevant case law indicates that the First Circuit has yet to weigh in on the appropriate methodology for analyzing the data concerning the lateness of the debtor's payments during the preference and pre-preference period, one thing is clear from *Healthco, supra:* the determination of ordinary course involves consideration of a myriad of factors to assess the consistency of the debtor's payment practices during the relevant time frames. The weight of authority suggests that some level of analysis concerning the timing of the preferential payment compared to the historical timing of payments prior to the preference period is warranted.

### III. The Standards Applied

#### A. Villa Blanca's Summary Judgment Motion

 To prevail on its ordinary course of business defense, Villa Blanca was required to establish that the January 2009 Payment either: (1) was made in the ordinary course of the business or financial affairs of Villa Blanca and the Debtor (the subjective test); or (2) was made according to ordinary business terms (the objective test). Because Villa Blanca never developed an argument under the objective test, the critical inquiry on appeal is whether there exists a genuine issue of material fact with respect to the January 2009 Payment under the subjective component of § 547(c)(2)(A).

The bankruptcy court's conclusion that Villa Blanca satisfied its burden under the

subjective prong hinged on its determination that "the Debtor's Tenant's Ledger reveal[ed] an inconsistent payment date and thus demonstrate[d] that the lessor/lessee payment relationship between the Debtor and [Villa Blanca] seemed to be a rather flexible one." Because this conclusion is devoid of legal authority and unaccompanied by any analysis of the data concerning the Debtor's payment pattern, it is at odds with the weight of authority, which favors a more elaborate, multi-factor analysis to assess whether a challenged transaction is consistent with the parties' course of dealing.

While there is no "precise legal test" for establishing the ordinary course of business between the parties, the controlling factor is whether the transactions between the Debtor and Villa Blanca were consistent both before and during the 90–day preference period. *See In re Healthco,* 132 F.3d at 110. This determination requires, for starters, the establishment of a baseline period for comparison, reaching back to a period when the Debtor was financially healthy. Nothing in the record suggests that Villa Blanca addressed, or that the bankruptcy court even considered, the issue of the appropriate look-back period for this case, nor does the record otherwise disclose sufficient information from which the Panel might discern when the Debtor was financially sound for purposes of that determination.

Villa Blanca not only failed to establish a baseline period for comparison, but also

---

duced to a mathematical equation. It is broader and more comprehensive than that. While the Trustee may ultimately prevail at trial with his "days to pay" analysis, he cannot prevail as a matter of law. In evaluating the summary judgment evidence submitted on the subjective prong of § 547(c)(2), the Court concludes that a genuine issue of material fact exists with

regard to whether the transfers were consistent with the ordinary course of the relationship between the Debtor and the Defendant.

2012 WL 481582, at *8. A review of relevant cases indicates that other courts have not adopted *ACP Ameri–Tech's* rejection of any mathematical analysis whatsoever.

neglected to point to and analyze evidence demonstrating that the timing of the January 2009 Payment was consistent with, or ordinary in relation to, payment practices during that period. Although it relied on a "lateness" theory, Villa Blanca never disclosed the degree of lateness of the challenged payment. We cannot even discern with certainty which month's rental obligation was discharged by the January 2009 Payment. Timing issues aside, Villa Blanca ignored other relevant factors prescribed for comparison by the First Circuit, including the amount transferred and the circumstances under which the transfer was effected. *See In re Healthco*, 132 F.3d at 109 (citations omitted). It simply furnished the bankruptcy court with a copy of a 32–page payment ledger, without any analysis of the data or application of the *Healthco* factors. Villa Blanca has provided no analysis from which we can determine that: the January 2009 Payment was consistent with past payments in form; it deviated from usual collection or payment activities; or, it did not take advantage of the Debtor's deteriorating financial condition. *See In re Healthcentral.com*, 504 F.3d at 790.[14] As one court admonished in an analogous case, where the defendant creditor similarly presented without analyzing a table of payments, " 'litigants should not seriously expect to obtain a remedy without doing the necessary leg work first.' " *In re PMC Mktg., Corp.*, 526 B.R. at 447 (quoting *Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 107 (1st Cir.2013)); *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001) (warning counsel, in the context of summary judgment, to avoid imposing upon the court "the daunting burden of seeking a needle in a haystack").

Although courts have adopted varying mathematical approaches for evaluating the data concerning the parties' payment practices, they are in agreement that the "cornerstone of the inquiry is that the creditor must demonstrate some consistency with other business transactions between the debtor and the creditor." *In re Affiliated Foods*, 750 F.3d at 719 (citation omitted) (internal quotations omitted). Under no theory is the conclusory incantation "late payments are ordinary course," standing alone, sufficient to satisfy § 547(c)(2)(A). Rather, the consistency determination requires a "fine-grained analysis." *See In re KLN Steel Prods. Co.*, 506 B.R. at 465. Villa Blanca's argument that the Debtor's rent payments were consistently late falls short of this mark. On this record, we cannot say whether the January 2009 Payment is an example of "the tottering [D]ebtor [deciding] to put one creditor ahead of the others" or a case of the Debtor simply "doing the same thing [it] had been doing before [it] began to totter." *In re Xonics Imaging Inc.*, 837 F.2d 763, 767 (7th Cir.1988).

Accordingly, there existed a genuine issue regarding the consistency of the January 2009 Payment with the parties' pre-preference period transactions. Therefore, we conclude that the bankruptcy court erred in granting the Summary Judgment Motion, and our examination proceeds to the Cross-motion and the Amended Cross-motion.

## IV. The Trustee's Cross–Motion for Summary Judgment and the Amended Cross–Motion

The Trustee filed the Cross-motion on March 7, 2013, and, 39 days later, she filed the Amended Cross-motion. The record

---

14. Although Villa Blanca furnished no calculations, the Trustee—assuming Villa Blanca's burden—supplied her own, which showed a meaningful change in the degree of lateness of payments during the pre- and post-preference period.

indicates that the Trustee served Villa Blanca with both versions of her summary judgment request and that Villa Blanca failed to timely respond to either, although it had ample opportunity to do so.

Villa Blanca's failure to respond to the original Cross-motion was not without consequence. As one treatise observed, "a motion may be amended at any time before the judge has acted upon the request, although it is particularly inappropriate after briefs have been interposed by the opposing parties, oral arguments have been heard, or other forms of reliance have been built up on the basis of the original motion." 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice and Procedure* § 1194 (3d ed.2015) (citing *MacNeil v. Whittemore*, 254 F.2d 820 (2d Cir.1958)) (holding trial court properly permitted defendant to amend his motion to dismiss two days after original motion and nearly a month before the hearing on the motion). The record before us discloses no such indicia of reliance on the Cross-motion by Villa Blanca. Under these circumstances, the Amended Cross-motion superseded its predecessor, the Cross-motion, thereby rendering it moot. *See, e.g., Donnelly v. Corvest Prop. Trust*, No. 08–CV–2148,

2010 WL 2265712, at *1 n. 1 (C.D.Ill. June 4, 2010) (treating original summary judgment motion as superseded and rendered moot by amended motion); *Murphy v. Zoning Comm. of the Town of New Milford*, 289 F.Supp.2d 87, 126 (D.Conn.2003), *vacated on other grounds*, 402 F.3d 342 (2d Cir.2005) (same). It follows that any adjudication of the merits of the Cross-motion would have been error, as that motion was no longer pending before the bankruptcy court. Thus, we conclude that the bankruptcy court erred when it denied the Cross-motion.[15]

This leaves us with one remaining issue—the bankruptcy court's decision to strike the Amended Cross-motion from the record and, more particularly, whether this was an appropriate exercise of the court's discretion. The Amended Cross-motion is not a "pleading" within the meaning of Rule 7[16] and, therefore, was not subject to Rule 15's leave or timing provisions dealing with the amendment of "pleadings."[17] Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice and Procedure* § 1194 (3d ed.2015) (citations omitted); *see also Hunt v. Brooks Run Min. Co.*, 51 F.Supp.3d 627, 635 (S.D.W.Va.2014) (stating "Rule 15 speaks only to the amendment of 'plead-

---

**15.** We note, however, if the Amended Cross-motion had not superseded the Cross-motion, and if the Cross-motion were before us, it would have been meritorious.

**16.** Rule 7 distinguishes between "pleadings" and "motions," and provides that only the following "pleadings" are allowed: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R.Civ.P. 7(a).

**17.** Rule 15 provides, in pertinent part:

**(a) Amendments Before Trial.**
**(1) Amending As a Matter of Course.** A party may amend its pleading once as a matter of course within:
 **(A)** 21 days after serving it, or
 **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
 **(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
Fed.R.Civ.P. 15(a)(1)–(2).

ings'" and a "motion for summary judgment (or a response thereto) is not a pleading") (citation omitted).[18] Rather, a "motion is subject to 'timely' amendment" and "the ability to amend a motion is left to the discretion of the trial judge...." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice and Procedure* § 1194 (3d ed.2015) (citations omitted).

Here, we cannot say that the 39 days that separated the Cross-motion and the Amended Cross-motion amounted to an unreasonable delay. Furthermore, nothing in the Puerto Rico Local Bankruptcy Rules or in the record of the proceedings below indicates that the Trustee was required to obtain leave to amend the Cross-motion. Instead, the record reflects that there was no hearing date scheduled in connection with either of the Trustee's summary judgment requests. Moreover, the bankruptcy court stated in its April 15, 2013 order that the final pretrial conference scheduled for April 24, 2013 had been "vacated" [sic]. In addition, the December 2012 Order did not restrict or otherwise address the filing of amended papers, and the court's acquiescence in the late filing of the Summary Judgment Motion suggested lax enforcement of the December 2012 Order.[19]

Most significantly, we perceive no prejudice to Villa Blanca by permitting the Trustee to amend the Cross-motion, especially given Villa Blanca's silence when confronted with the Trustee's two summary judgment requests. *See* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, *Federal Practice and Procedure* § 1194 (3d ed.2015) (stating the exercise of judicial discretion to permit amendment to motion is appropriate if the adverse parties will not be prejudiced by the amendment). Moreover, the Panel can conceive of no legitimate reason to justify the bankruptcy court's decision to strike the Amended Cross-motion. Accordingly, we conclude that the bankruptcy court abused its discretion when it struck the Amended Cross-motion from the record.

## CONCLUSION

Based on the foregoing, we **REVERSE** the Order, in part, to the extent that it granted the Summary Judgment Motion. We **VACATE** the Order to the extent that it denied the Cross-motion and struck the Amended–Cross–motion, and **REMAND** the matter to the bankruptcy court for further proceedings consistent with this opinion.[20]

**18.** *But see Carter v. Am. Bus Lines, Inc.,* 22 F.R.D. 323, 326 (D.Neb.1958) (expressing doubt that the word "pleadings" was limited to those papers set forth in Rule 7(a)).

**19.** As one court aptly observed in connection with the enforcement of scheduling orders: "'[l]ax enforcement of ... court orders results in the certainty of lax compliance.... The vice of lax enforcement is self-confounding, because counsel form the expectation that failures and violations will be excused and the correlative perception of unfairness resulting from apparently uneven enforcement.'" *Planavsky v. County of Broome (In re Planavsky),* 432 B.R. 481, 492 (Bankr. N.D.N.Y.2010) (quoting *Bonfiglio v. Centro Evangelista Jahova Shannah (In re Bonfiglio),* 231 B.R. 197, 198 (Bankr.S.D.N.Y.1999)).

**20.** Without seeking to prescribe the course of the proceedings on remand, we think that the court below would be well-advised to consider our recent decisions in *Wiscovitch–Rentas v. Sur CSM Plaza Inc. (In re PMC Mktg. Corp.),* BAP No. PR 15–023, slip op. (B.A.P. 1st Cir.

Jan. 19, 2016), and *Wiscovitch–Rentas v. Santa Rosa Mall LLC (In re PMC Mktg. Corp.),* BAP No. PR 15–024, slip op. (B.A.P. 1st Cir. Jan. 19, 2016).