# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1721

_____

In re: Affiliated Foods Southwest Inc.

*Debtor*

------------------------------

Richard L. Cox, Trustee

*Appellant*

v.

Momar Incorporated

*Appellee*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 20, 2013
Filed: April 10, 2014

_____

Before WOLLMAN, LOKEN, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

This is an adversary proceeding commenced by Chapter 7 bankruptcy trustee Richard Cox to recover as avoidable preferences two payments that Momar, Inc. received from the debtor, Affiliated Foods Southwest, Inc., during the 90 days prior to Affiliated Foods filing a voluntary Chapter 11 petition (later converted to a Chapter 7 proceeding). At that time, Affiliated Foods was a wholesale food cooperative. Momar was a supplier of cleaning and sanitation products. Momar conceded that the payments were preferential transfers as defined in 11 U.S.C. § 547(b) and asserted affirmative defenses to preference liability, including the exception for transfers made in the ordinary course of business in 11 U.S.C. § 547(c)(2). Momar demanded a jury trial and refused to consent to trial by jury in the bankruptcy court.

Acknowledging Momar's right to a jury trial, the bankruptcy court referred the case to the United States District Court for the Eastern District of Arkansas. See Langenkamp v. Culp, 498 U.S. 42, 45 (1990) ("a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate," quotation omitted). In the district court, the trustee conceded that one of the two transfers was not an avoidable preference. The parties filed cross-motions for summary judgment on Momar's claim that the second transfer -- a payment of $31,470.50 made on April 26, 2009, to satisfy a Momar invoice dated March 31, 2009 -- fell within the ordinary course of business exception in § 547(c)(2). The trustee appeals the district court's[1] grant of summary judgment excepting that second transfer. We affirm.

**I.**

"In general, an avoidable preference is a transfer of the debtor's property, to or for the benefit of a creditor, on account of the debtor's antecedent debt, made less than

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

ninety days before bankruptcy while the debtor is insolvent, that enables the creditor to receive more than it would in a Chapter 7 liquidation. *See* § 547(b). If a transfer is avoidable under § 547(b), the creditor may escape preference liability by proving that it falls within one of the exceptions set forth in § 547(c)." In re Jones Truck Lines, Inc., 130 F.3d 323, 326 (8th Cir. 1997). This appeal concerns the often-litigated exception in § 547(c)(2) for transfers in the ordinary course of business.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") significantly amended the ordinary course of business exception in § 547(c)(2). Pub. L. No. 109-8, § 409, 119 Stat. 23, 106 (2005). The prior version required a creditor seeking to avoid preference liability to prove three elements: (i) that the preferential transfer paid a debt incurred in the ordinary course of the debtor's business; (ii) that it was "made in the ordinary course of business . . . of the debtor and the transferee"; *and* (iii) that it was made "according to ordinary business terms." 11 U.S.C. § 547(c)(2) (2003); see In re U.S.A. Inns of Eureka Springs, Ark., Inc., 9 F.3d 680, 682-84 (8th Cir. 1993).

In the BAPCPA amendment, Congress responded to widespread creditor concern that this three-part test was unfair and created needless uncertainty:

> Quite often industry standards are extremely difficult to ascertain outside bankruptcy and difficult to prove in the context of preference litigation. Thus, it is more accurate to rely on the relationship between the parties.

In re Nat'l Gas Distribs., LLC, 346 B.R. 394, 401 (Bankr. E.D.N.C. 2006), quoting a 1997 Report of the National Bankruptcy Review Commission; see generally Charles J. Tabb, The Brave New World of Bankruptcy Preferences, 13 Am. Bankr. Inst. L. Rev. 425, 440-45 (2005). Amended § 547(c)(2) now provides that a creditor that received a preferential transfer, such as Momar, will avoid preference liability if it proves that:

. . . such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was --

> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

> (B) made according to ordinary business terms.

While the preferred creditor must still prove that the *debt* was incurred in the ordinary course of the debtor's business,[2] the remainder of the test is now disjunctive. The creditor must prove that the *transfer* either was made in the "ordinary course of [its] business" with the debtor, *or* that it was made "according to ordinary business terms." The preferred creditor "has the burden of proving the nonavoidability of a transfer under subsection (c)." 11 U.S.C. § 547(g).

This is the first case requiring us to apply amended § 547(c)(2). The district court ruled in the alternative that the preferential transfer in question was both "made in the ordinary course" of Momar's business with Affiliated Foods, and was "made according to ordinary business terms." The parties briefed both issues on appeal. Because Momar must satisfy only one of these requirements under the amended statute, our conclusion that the transfer was "made in the ordinary course of business" within the meaning of § 547(c)(2)(A) means that we need not address the "ordinary business terms" standard in amended § 547(c)(2)(B).

## II.

The facts regarding the course of dealings between Momar and Affiliated Foods are undisputed. Momar supplied cleaning and sanitation products on an as-needed

---

[2]In this case, the trustee does not dispute that the transfer at issue paid "a debt incurred by the debtor in the ordinary course of [its] business" with Momar.

basis, sending products and invoices to Affiliated Foods every three to four months. The bankruptcy petition was filed May 5, 2009. The following is a list of all transactions between the parties in the two years prior to that filing:

| Period | Invoice/ Ship Date | Payment Date | Payment Amount | Days Elapsed |
|---|---|---|---|---|
| **Pre-Preference** | 1/22/07 | 2/26/07 | $16,840.20 | 35 days |
| | 4/23/07 | 5/7/07 | $23,872.10 | 13 days |
| | 7/31/07 | 8/20/07 | $24,667.80 | 20 days |
| | 10/31/07 | 12/17/07 | $22,399.10 | 47 days |
| | 1/31/08 | 3/7/08 | $34,450.09 | 35 days |
| | 5/29/08 | 7/15/08 | $26,631.20 | 47 days |
| | 8/28/08 | 10/17/09 | $29,089.00 | 49 days |
| **Preference** | 12/31/08 | 2/16/09 | $34,661.80 | 47 days |
| | 3/31/09 | 4/26/09 | $31,470.50 | 26 days |

In concluding that the last payment, the preferential transfer at issue, was made in the ordinary course of Momar's on-going business with Affiliated Foods, the district court noted that these nine payments were made between 13 and 49 days after the invoice date; that the seven pre-preference payments were made, on average, 35 days after the invoice date; that the four payments made in the year prior to bankruptcy were made, on average, 42 days after the invoice; and that the two pre-preference transfers during that year were made, on average, 48 days after the invoice. The transfer at issue was made 26 days after the invoice, well within this overall range. Based on this data, and the absence of evidence of "unusual collection activity," the district court concluded that Momar "demonstrated the requirements of 11 U.S.C. § 547(c)(2)(A) by a preponderance of the evidence [and] is entitled to summary judgment in its favor as to this transaction."

**A.** Our initial concern with this ruling is that Momar never withdrew its demand for a jury trial, § 547(c)(2)(A) requires "a peculiarly factual analysis," and the district court in granting summary judgment applied a "preponderance of the evidence" standard that is appropriate after trial but not for the grant of summary judgment.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (summary judgment may be granted "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law"); Fed. R. Civ. P. 56(a).  However, on appeal, the trustee does not argue that the court committed Rule 56 error.  Instead, the Standard of Review section of the trustee's Brief states that we should review the district court's determination of "whether the payment to Momar was made in the ordinary course of business of the parties . . . under the clearly erroneous standard," the standard we applied in reviewing § 547(c)(2) *post-trial* rulings in case such as Lovett v. St. Johnsbury Trucking, 931 F.2d 494, 500 (8th Cir. 1991).

We are unwilling to increase the parties' litigation expense on account of a procedural issue neither has raised.  The § 547(c)(2)(A) issue has been resolved at the summary judgment stage in prior cases, and here the parties could have avoided this Rule 56 problem by submitting that issue to the district court on stipulated facts, rather than on cross motions for summary judgment.  Cf. Nielsen v. Western Elec. Co., 603 F.2d 741, 743 (8th Cir.1979).  Therefore, like the district court, we will decide the issue using post-trial standards.  But we caution district courts and parties in future preferential transfer cases that the Seventh Amendment right to jury trial must be respected and therefore, unless a proper demand for jury trial has been waived, the normal rules limiting the grant of summary judgment apply.  See In re Healthcentral.com, 504 F.3d 775, 790-91 (9th Cir. 2007).

**B.** Turning to the merits, "[t]here is no precise legal test" to determine whether a preferential transfer was made in the ordinary course of business between the debtor and the creditor; "rather, the court must engage in a peculiarly factual analysis."

Lovett, 931 F.2d at 497 (quotations omitted). As we explained in Lovett, and as the plain meaning of the statute suggests, "the cornerstone" of the inquiry is that the creditor must demonstrate "some consistency with other business transactions between the debtor and the creditor." Id. Other factors may be relevant in a particular case, such as whether the preferential transfer involved an unusual payment method or resulted from atypical pressure to pay. See In re Spirit Holding Co., 153 F.3d 902, 905-06 (8th Cir. 1998) (change to expedited method of payment on the eve of bankruptcy was not in the ordinary course of business). But when those factors are absent, as in this case and in Lovett, "the analysis focuses on the time within which the debtor ordinarily paid the creditor's invoices, and whether the timing of the payments during the 90-day [preference] period reflected 'some consistency' with that practice." 931 F.2d at 498. This inquiry is not resolved simply by looking at the terms of any contract between the parties. "[A] 'late' payment really isn't late if the parties have established a practice that deviates from the strict terms of their written contract." In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1032 (7th Cir. 1993); accord Lovett, 931 F.2d at 498-99.

The trustee argues that the district court committed clear error because the 26-day delay in making the challenged payment was not consistent with the ordinary business dealings between Momar and Affiliated Foods. Specifically, the trustee notes that Affiliated Foods made three payments to Momar in the year preceding the preference period that were 36, 47, and 49 days after the invoice being paid, for a mean days-to-pay of 44 days. Because the challenged payment was made more quickly than any payment in the previous year, the trustee argues, it was not made in the ordinary course of business. Momar responds by noting that in the two years prior to the preference period, Affiliated Foods made seven payments to Momar, on average, 35.43 days after the invoice, with payment times ranging from 13 to 49 days following invoicing. Therefore, Momar argues, the challenged payment's 26-day delay was within the ordinary course of business between the parties.

-7-

The trustee argues the district court erred in considering this two-year period because we "held that the appropriate look-back period is one year" in Lovett, 931 F.3d at 498. This misreads our decision. We ruled only that twelve months preceding the 90-day preference period was "an appropriate standard for determining the ordinary course of business between the parties" in that case. Obviously, when considering this type of fact-intensive issue, what is appropriate in one case is not necessarily appropriate in the next case. The purpose of a look-back period is to evaluate whether challenged transfers "conform to the norm established by the debtor and the creditor in the period before, preferably well before, the preference period." Tolona, 3 F.3d at 1032. To make a sound comparison, "[n]umerous decisions support the view that the historical baseline should be based on a time frame when the debtor was financially healthy." Quebecor World (USA), Inc., 491 B.R. 379, 387 (Bankr. S.D.N.Y. 2013) (adopting two-year period), and cases cited.

In Lovett, a one year look-back captured 720 invoices paid prior to the 90-day preference period, and 122 invoices paid during that period. 931 F.2d at 498. Here, by contrast, Affiliated Foods and Momar had an established relationship with regular dealings, but there were only nine transactions in the two years prior to the bankruptcy filing. The one-year look-back suggested by the trustee included only three transactions outside the preference period, all occurring at a time when Affiliated Foods was suffering, in the trustee's own words, "severe cash flow problems." In these circumstances, a two year look-back capturing all nine transactions is a far better benchmark.

Surveying these nine transactions, we observe a wide range of payment delays but some recurring patterns. Invoices sent in December and January were paid after consistently longer delays -- 35-47 days -- than invoices in March and April -- 13 days in 2007 and 26 days for the April 2008 invoice at issue. There were increased delays in mid-2008, consistent with Affiliated Foods' financial distress. Momar's willingness to tolerate those delays was consistent with one purpose of the Bankruptcy

-8-

Code's preference rules, "to encourage creditors to work with troubled businesses." In re LGI Energy Solutions, Inc., No. 12-3899, slip op. at 4 (8th Cir. Mar. 20, 2014).[3] On this record, with a historical average of 35 days between invoice and payment and a range of 13 to 49 days, we cannot conclude that the district court clearly erred in finding that the preferential transfer at issue, a payment made to a regular supplier 26 days after the supplier's invoice, was made "in the ordinary course of business" between debtor Affiliated Foods and transferee Momar.

The judgment of the district court is affirmed.

_____

[3]Without an ordinary course of business exception, the Supreme Court has explained, "trade creditors and other suppliers of necessary goods and services might have been reluctant to extend even short-term credit and might have required advance payment instead, thus making it difficult for many companies in temporary distress to have remained in business." Union Bank v. Wolas, 502 U.S. 151, 158-59 (1991).