# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 16-1856

_____

In re: AgriProcessors, Inc.

*Debtor*

------------------------------

Joseph E. Sarachek, in his capacity as Chapter 7 Trustee

*Appellee*

v.

Luana Savings Bank

*Appellant*

------------------------------

American Bankers Association; Iowa Bankers Association

*Amici on Behalf of Appellant(s)*

_____

## No. 16-1955

_____

In re: AgriProcessors, Inc.

*Debtor*

------------------------------

Joseph E. Sarachek, in his capacity as Chapter 7 Trustee

*Appellant*

v.

Luana Savings Bank

*Appellee*

------------------------------

American Bankers Association; Iowa Bankers Association

*Amici on Behalf of Appellee(s)*
_____

Appeals from United States District Court
for the Northern District of Iowa - Dubuque
_____

Submitted: January 12, 2017
Filed: June 15, 2017
_____

Before LOKEN, BEAM, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

In the 90 days before filing for bankruptcy, Agriprocessors, Inc., wired funds covering overdrafts at Luana Savings Bank. The bankruptcy trustee, Joseph E. Sarachek, argues those overdraft-covering deposits are avoidable transfers

recoverable from Luana. The bankruptcy court[1] found Sarachek could recover some deposits but not others. Sarachek and Luana cross-appealed. The district court[2] affirmed. The parties again cross-appeal. Having jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291, this court affirms.

I.

Agriprocessors had two accounts with Luana relevant here—account 1430 (a checking account) and account 367788 (whose purpose the parties dispute). This appeal is about overdrafts of these accounts. Luana's policy was to provisionally settle all checks on Agriprocessors' checking account and debit that account. When provisional settlement/debiting caused or contributed to a negative account balance, an "intraday overdraft" occurred. By Iowa law,[3] Luana's provisional settlement did not become final until midnight the next business day. **Iowa Code §§ 554.4104(1)(j), 554.4301**. Luana generally let provisional settlements become final at the midnight deadline, even if they caused or contributed to a negative balance. When Luana allowed provisional settlements causing or contributing to a negative balance to become final at the midnight deadline, a "true overdraft" occurred. Throughout the 90 days before Agriprocessors petitioned for bankruptcy, it deposited funds to cover both intraday and true overdrafts.

During the 90-day preference period—August 6, 2008, to November 4, 2008—the checking account's balance fluctuated but was always negative. For most

---

[1]The Honorable Thad J. Collins, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

[2]The Honorable Linda R. Reade, then Chief Judge, United States District Court for the Northern District of Iowa.

[3]The district court applied Iowa law to Agriprocessors' banking with Luana. The parties do not challenge that application.

of the period, account 367788 had $1.4 million in it. Luana says it "netted" the two accounts, considering the 367788 funds when determining whether the checking account was overdrawn. Put another way, Luana says that so long as the checking account had more than *negative* $1.4 million, it treated Agriprocessors as having a positive balance (and thus treated Agriprocessors as if no overdrafts occurred). Sarachek disputes that Luana properly "netted" the two accounts.

Near the end of the preference period, Luana transferred the $1.4 million from account 367788 to the checking account.

Agriprocessors petitioned for Chapter 7 bankruptcy. Sarachek filed to recover deposits covering both intraday and true overdrafts, as well as the $1.4 million Luana transferred the checking account. Luana argued none of the deposits were recoverable, raised affirmative defenses, and contended the $1.4 million was not recoverable because it was a protected setoff. The bankruptcy court found Sarachek could recover the true overdrafts but not the intraday overdrafts. It rejected Luana's affirmative defenses. And it found that setoff was improper but did not affect Sarachek's recovery. On cross-appeals, the district court affirmed the bankruptcy court. It held that the bankruptcy court erred in finding the setoff improper, but concluded that error did not affect Sarachek's recovery. The parties again cross-appeal.

## II.

"This court sits as a second court of review in bankruptcy matters, reviewing interpretations of law de novo and factual findings for clear error." **In re Peet**, 819 F.3d 1067, 1069 (8th Cir. 2016) (internal quotation marks omitted). Under clear error review, this court will "overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or

if we are left with the definite and firm conviction that an error was made." ***Lincoln Provision, Inc. v. Puretz***, 775 F.3d 1011, 1014 (8th Cir. 2015).

III.

A bankruptcy trustee may "avoid" a debtor's transfer of a property interest (1) "to or for the benefit of a creditor"; (2) "for or on account of an antecedent debt owed by the debtor before such transfer was made"; (3) "made while the debtor was insolvent"; (4) "made . . . within 90 days before the date of the filing of the petition"; *and* (5) "that enables [the] creditor to receive more" than it would receive under Chapter 7 if the transfer had not been made. **11 U.S.C. § 547(b)**. The trustee has the burden to prove a transfer is avoidable. **§ 547(g)**. The trustee may not avoid a transfer if a creditor proves an exception applies. **§ 547(c), (g)**.

If a transfer is avoidable, the trustee may recover it from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." **§ 550(a)**. The trustee may not recover from a "mere conduit for an avoidable transfer." ***In re Reeves***, 65 F.3d 670, 676 (8th Cir. 1995).

IV.

The district court found Sarachek could not recover Agriprocessors' intraday-overdraft-covering deposits from Luana for two independent reasons. First, it found that Agriprocessors' "intraday overdrafts do not give rise to antecedent debt." *See* **§ 547(b)(2)**; ***Laws v. United Mo. Bank of Kansas City, N.A.***, 98 F.3d 1047, 1051 (8th Cir. 1996) ("[R]outine advances against uncollected deposits do not create a 'debt' to the bank."). Second, "with respect to the intraday overdrafts, the Bank . . . was functioning as a mere conduit." *See* **§ 550(a)**; ***In re Reeves***, 65 F.3d at 676. On appeal, Sarachek argues the intraday overdrafts are antecedent debt. But he does not

-5-

argue that Luana was more than a "mere conduit" when it received intraday-overdraft-covering deposits. Even if this court decided that the intraday overdrafts were antecedent debts, the district court's "mere conduit" finding would stand, preventing Sarachek from recovering intraday-overdraft-covering deposits from Luana. This court declines to consider Sarachek's antecedent-debt argument because it would not affect the outcome of this case. *See In re Railworks Corp.*, 760 F.3d 398, 403 (4th Cir. 2014) ("Of course, if the funds are not recoverable under § 550, then it matters not whether they are avoidable under § 547."). *See also In re Willaert*, 944 F.2d 463, 464 (8th Cir. 1991) ("The fundamental purpose of section 547(b)'s avoidable preference provision is to restore the bankruptcy estate to its pre-preferential transfer condition. Section 550(a) is the vehicle that allows the trustee to accomplish this.").[4]

## V.

The district court found Sarachek could recover Agriprocessors' true-overdraft-covering deposits from Luana. Luana argues the district court erred because (A) true overdrafts did not create debts, *see* **§ 547(b)(2)**, and (B) even if the deposits were avoidable, Sarachek cannot recover them from Luana.

## A.

Luana asks this court to hold, on policy grounds, that Agriprocessors' true overdrafts are not debt. But this issue is controlled by the Bankruptcy Code and this

---

[4]Sometimes, trustees can recover avoided transfers without the § 550 remedy. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 371-72 (2006) (explaining that a "mere declaration of avoidance" is sometimes sufficient to recover a transfer); *In re Burns*, 322 F.3d 421, 427 (6th Cir. 2003) ("The trustee's remedy of recovery is necessary only when the remedy of avoidance is inadequate."). Here, however, Sarachek does need the § 550 remedy to get what he seeks—return of Agriprocessors' intraday-overdraft-covering deposits.

court's precedent. "The test for when a debt is incurred is whether the debtor is legally obligated to pay." *Laws*, 98 F.3d at 1051. *See also* **11 U.S.C. § 101(12)** ("The term 'debt' means liability on a claim."). Under Iowa law, "payment by a bank of an overdraft is considered an unsecured loan . . . and/or an extension of credit to a customer." *Clinton Nat. Bank v. Saucier*, 580 N.W.2d 717, 720 (Iowa 1998) (citation omitted). *See also Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411 (2017) ("State law usually determines whether a person has [a right to payment]."). When Luana allowed provisional settlements of checks to become final, even though those settlements contributed to a true overdraft, Luana paid overdrafts for Agriprocessors. Luana thus made an unsecured loan and/or extension of credit to Agriprocessors. As a result, Agriprocessors was legally obligated to Luana for the amount of the overdrafts. The true overdrafts were debt.

B.

Luana contends it was not an initial transferee liable under § 550, but rather a non-liable "mere conduit." "[T]o be an initial transferee, a party must have dominion and control over the transferred funds." *In re Reeves*, 65 F.3d at 676. Dominion over funds is "legal title to them and the ability to use them as [the party] sees fit." *In re Incomnet, Inc.*, 463 F.3d 1064, 1071 (9th Cir. 2006). Control is real control of the funds in question. *Id.*

The district court correctly found Luana had both dominion and control. When Luana allowed a true-overdraft-causing provisional settlement to become final, Luana irrevocably paid a third party in the amount of the true overdraft. Luana was not a "conduit" between Agriprocessors and the third party: Luana itself paid the third party. In exchange for Luana paying the overdraft, Agriprocessors owed Luana a debt. Therefore, when Agriprocessors made deposits covering true overdrafts, Agriprocessors made payments on debt to Luana. Luana had full control over the true-overdraft-covering deposits and could use the funds for any purpose.

Challenging this determination, Luana says Agriprocessors' account was "fluid" and overdrafts are different from "traditional loans." These arguments do not address Luana's dominion and control over the true-overdraft-covering deposits. The district court correctly found that Sarachek may recover Agriprocessors' true-overdraft-covering deposits from Luana.

VI.

A trustee cannot recover an otherwise avoidable transfer if the creditor proves a § 547(c) exception. Luana argues that the bankruptcy court and district court erred in rejecting three exceptions: contemporaneous exchanges for new value, debts and transfers in the ordinary course of business, and transfers creating security interests.

A.

The first exception: for a transfer that was "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." **§ 547(c)(1)**. Luana asserts that it and Agriprocessors intended the overdraft-covering deposits to be in exchange for new provisional credit (in the form of overdraft protection).

"The critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." ***In re Genmar Holdings, Inc.***, 776 F.3d 961, 964 (8th Cir. 2015). The bankruptcy court found this intent missing:

> The Bank entirely fails to show, however, that the parties **intended** this to be new value and that they intended it to be linked to paying 'true overdrafts' contemporaneously. Quite to the contrary, the Bank never communicated such an intent to Debtor and Debtor never indicated any

such understanding. The Bank sought to avoid intraday overdrafts whenever it could and to avoid more true overdrafts entirely. All 'overdrafts'—in the words of [Luana's president]—were 'unexpected' or 'unplanned.' The Bank entirely fails to demonstrate it took the payments on the 'true overdrafts' in exchange for an agreement to provide anything new at all—let alone provide it contemporaneously.

(emphasis in original). Since intent is a question of fact, review is for clear error. ***In re Gateway Pac. Corp.***, 153 F.3d 915, 918 (8th Cir. 1998).

Luana argues it did show that the parties intended Agriprocessors' deposits to be in exchange for new provisional credit. It points to evidence that it waived overdraft charges on Agriprocessors' accounts, had discretion to cover overdrafts, and regularly covered them. This evidence does not show a clear error. Luana's evidence does not speak directly to the parties' intent. It is compatible with the bankruptcy court's finding that Luana allowed overdrafts because it believed Agriprocessors would cover them, not because it had agreed to do so in exchange for receiving past deposits. The bankruptcy court did not clearly err in rejecting this exception.

B.

The second exception: for a transfer made "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," and either "(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (B) made according to ordinary business terms." **§ 547(c)(2)**. The bankruptcy court found that Agriprocessors did not incur the debts—the true overdrafts—in the ordinary course of business with Luana.

This court has rarely addressed whether a *debt* was "incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee." This court has said that "no precise legal test" applies to any of the § 547(c)(2)

-9-

elements, requiring the bankruptcy court to "engage in a peculiarly factual analysis." *In re Armstrong*, 291 F.3d 517, 527 (8th Cir. 2002) (internal quotation marks omitted). The court's "analysis turns upon whether" the debts were incurred in the ordinary course of business of Luana and Agriprocessors. *See id.*

Many of this court's precedents address whether a *transfer* was made in the ordinary course of business. "[T]he cornerstone of the inquiry is that the creditor must demonstrate some consistency with other business transactions between the debtor and the creditor." *In re Affiliated Foods Sw. Inc.*, 750 F.3d 714, 719 (8th Cir. 2014) (internal quotation marks omitted). "Other factors may be relevant in a particular case, such as whether the preferential transfer involved an unusual payment method or resulted from atypical pressure to pay." *Id.* Because of the similar wording of § 547(c)(2)(A)'s transfer requirement ("made in the ordinary course of business or financial affairs of the debtor and the transferee") and § 547(c)(2)'s debt requirement ("debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee"), analogous standards should apply when analyzing whether a debt occurred in the ordinary course of business. The cornerstone of debt inquiry is "the creditor must demonstrate some consistency with other business transactions between the debtor and the creditor." Other factors may be relevant, such as whether the debt was created by "unusual" means or resulted from "atypical" pressure. *See In re Armstrong*, 291 F.3d at 527 (declining "to hold that a desperate debtor's irresponsible accumulation of gambling debts in an ill-fated attempt to cover fraud and embezzlement losses qualifies as the ordinary course of his business or financial affairs").

The bankruptcy court compared Agriprocessors' true overdrafts during the 90-day preference period to the nine months before the preference period. In the preceding nine months, Agriprocessors had four days of true overdrafts: just one during the first seven months (a $31,680 overdraft), then three in the two months preceding the preference period. The frequency of overdrafts then increased, with nine days of true overdrafts during the preference period. The amount of the

overdrafts during the earlier nine-month period were lower—both on average and in total—than the overdrafts during the preference period, which totaled $1,556,782.89. Luana argues these numbers overstate the increase in overdrafts because it became Agriprocessors' primary bank one month before the preference period, and Agriprocessors wrote more (and higher value) checks during the preference period. But, even considering Agriprocessors' increased activity, the number of overdrafts increased significantly compared to the previous nine months. There was an extreme increase compared to the first seven months. The bankruptcy court found that "the overdrafts were very unusual, not ordinary course debts, and started to happen only as [Agriprocessors] slid toward bankruptcy."

The bankruptcy court appropriately compared the transactions during the preference period to transactions during an earlier "look-back" period. *In re Affiliated Foods Sw. Inc.*, 750 F.3d at 720. The appropriate period for comparison depends on the facts of the case. "To make a sound comparison, numerous decisions support the view that the historical baseline should be based on a time frame when the debtor was financially healthy." *Id.* (internal quotation marks omitted). Here, the bankruptcy court noted the increase in overdrafts relative to the preceding nine months and the first seven of those nine months. It found overdrafts "started to happen only as [Agriprocessors] slid toward bankruptcy." Under the facts found by the district court, Agriprocessors' overdrafts during the preference period were not consistent with its activity when financially healthy.

The bankruptcy court also found that the overdrafts were "unplanned" and that Luana "discouraged" them. Luana and Agriprocessors, it determined, "designed" a "system" to "avoid" true overdrafts. It concluded "true overdrafts were simply not normal or an ordinary part of their relationship." Luana argues that intraday overdrafts were common before the preference period and the bankruptcy court should not have distinguished between intraday and true overdrafts. But the bankruptcy court found that the parties treated intraday and true overdrafts

-11-

differently: "The ordinary system between the parties allowed for intraday overdrafts with a full covering wire transfer from [Luana] before the end of the banking day." Luana asserts that the parties did not distinguish between intraday and true overdrafts, but it cites no supporting evidence. Luana further emphasizes consistencies during the nine-month and preference periods: Luana always operated a checking account for Agriprocessors, always allowed intraday overdrafting, and allowed some true overdrafts; Agriprocessors always cured the true overdrafts with wire transfers. But the existence of "other consistencies within the relationship" does not mean that Agriprocessors incurred the $1,556,782.89 of true-overdraft debt in the ordinary course of business. *See In re Gateway Pac. Corp.*, 153 F.3d at 918.

Luana does not show that the bankruptcy court clearly erred in finding that the true overdrafts were not debts incurred in the ordinary course of business. The bankruptcy court's finding that the true overdrafts lacked consistency with earlier transactions was supported by substantial evidence of Luana and Agriprocessors' practice. Its determination was bolstered by its findings that the parties took steps to avoid true overdrafts and that true overdrafts were not a normal part of their relationship. The bankruptcy court did not clearly err in rejecting this exception.

C.

The third exception: for transfers that create certain security interests. *See* **§ 547(c)(3)**. Neither the bankruptcy court nor the district court addressed this exception. The bankruptcy court did footnote that Luana made "a passing argument that it had an automatic perfected security interest," but it said so discussing setoff. In its district court reply brief, Luana stated it had a security interest in account 367788, again discussing setoff. Its district court briefs did not discuss the security-interest exception or cite § 547(c)(3). Because Luana did not raise this exception below and gives no reason to address it for the first time on appeal, this court declines to consider it. *See Gap, Inc. v. GK Dev., Inc.*, 843 F.3d 744, 748-49 (8th Cir. 2016).

VII.

Sarachek challenges the bankruptcy court's calculation of the transfers it can recover from Luana.

A.

Luana made several posting errors in Agriprocessors' checking account, making the balance appear higher than it really was during the preference period. After Agriprocessors filed its bankruptcy petition, Luana issued an account statement correcting those errors, indicating almost $800,000 owing. The bankruptcy court calculated Luana's liability using the uncorrected balances. Sarachek argues Luana's liability should be based on the corrected balances. Under Sarachek's proposal, Agriprocessors would have more true overdrafts, meaning more of its deposits would have covered true overdrafts and, therefore, more of its transfers would be avoidable.

The bankruptcy court gave two reasons for using uncorrected balances. First, it determined it would be inequitable to use the corrected balances. Second, Luana's claim to the debt reflected in the corrected statements did not arise until it corrected the statements (after Agriprocessors filed for bankruptcy).

Before the district court, Sarachek challenged the equitable basis for the bankruptcy court's decision. The district court affirmed insofar as the decision rested on equitable grounds. But the legal ground for the bankruptcy court's decision stands. If Agriprocessors did not owe the posting-error amounts until Luana corrected the statements, then no debt arose within the meaning of § 547. *See Laws*, 98 F.3d at 1051 ("The test for when a debt is incurred is whether the debtor is legally obligated to pay."). Sarachek's only argument against the bankruptcy court's legal determination is that "claim" has a broad definition in the Bankruptcy Code. That does not address whether the bankruptcy court erred in finding Luana had no claim

-13-

giving rise to a debt. Because the bankruptcy court's legal conclusion stands, this court declines to address Sarachek's challenge to the equitable ground. The bankruptcy court's decision to base Luana's liability on the uncorrected balances is affirmed.

B.

The bankruptcy court found that Luana and Agriprocessors agreed to "net" the checking account and account 367788 when determining whether Agriprocessors overdrew. As found by the bankruptcy court, this netting agreement meant that if the checking account had a balance of negative $1,399,999 and account 367788 had balance of $1,400,000, Agriprocessors did not overdraw. The bankruptcy court calculated Luana's liability based on the netted accounts.

Sarachek says the bankruptcy court erred three ways. First, he says, the bankruptcy court erred in finding a netting agreement. The parties agree the existence of the agreement is a question of fact reviewed for clear error. The bankruptcy court based its finding on testimony from Agriprocessors' controller, Luana's president, and Luana's chief financial officer. Sarachek says the bankruptcy court clearly erred because (a) it struck part of the CFO's testimony and (b) experts testified that a netting arrangement would be improper and there was no written agreement. The bankruptcy court did not clearly err because its finding was supported by testimony—from the controller, president, and CFO—that Luana and Agriprocessors treated the accounts as netted. Experts' views of the propriety of the arrangement and the lack of written agreement do not show that the bankruptcy court erred in finding an agreement.

Second, Sarachek contends that every overdraft of the checking account created a debt, even if Luana and Agriprocessors agreed to net the accounts and there were enough 367788 funds to cover the checking-account overdraft. He says the

-14-

bankruptcy court made a legal error when it failed to recognize this, citing expert testimony that Luana could sue Agriprocessors to recover checking overdrafts even if account 367788 had a sufficiently positive balance. This theory contradicts the facts found by the bankruptcy court: Luana and Agriprocessors "actually did net the accounts or consider them as one." Agriprocessors did not incur debt to Luana unless the "one" account was overdrawn.

Third, Sarachek argues that even if netting was proper, a $250,000 deposit that Agriprocessors made into account 367788 during the preference period was a preferential transfer. The district court did not address this argument, nor does it appear in Sarachek's briefs in the district court. Sarachek waived this argument. This court declines to consider it.

## VIII.

On October 24, 2008, Luana transferred the $1.4 million from account 367788 into the checking account. Sarachek argues this is an avoidable transfer. Luana argues that it is not an avoidable transfer because it is was a valid setoff protected by 11 U.S.C. § 553(a).

The bankruptcy court found that its netting-agreement finding determined whether the $1.4 million transfer was avoidable. Because Luana and Agriprocessors agreed to treat the accounts as one, Agriprocessors incurred debt to Luana only when true overdrafts of the "one" account occurred. So long as Agriprocessors had $1.4 million in account 367788, it did not incur a debt to Luana until the balance of the checking account fell below negative $1.4 million. The bankruptcy court correctly found that the negative balance wiped out by the $1.4 million transfer was not a debt at all. The transfer was not "for or on account of an antecedent debt owed by the debtor before such transfer was made," and thus not avoidable. *See* **§ 547(b)(2)**.

The bankruptcy court stated that if it were wrong about the netting agreement, it would need to address the setoff, and would determine it was improper. On appeal, the district court considered whether the bankruptcy court erred in finding the setoff improper. The district court concluded that the bankruptcy court was incorrect that the setoff was improper, but affirmed because the bankruptcy court did not incorporate the $1.4 million in calculating damages.

Both Sarachek and Luana urge this court to rule on the merits of the setoff. This court declines to do so because the bankruptcy court correctly found that setoff does not apply to this transfer of funds between the two "netted" accounts.

\* \* \* \* \* \* \*

The district court is affirmed.

_____