# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 20-6005

_____

In re: Fansteel Foundry Corporation

*Debtor*

-----------------------------

Daniel Dooley, Trustee of the WDC Liquidation Trust

*Plaintiff - Appellee*

v.

Luxfer MEL Technologies

*Defendant - Appellant*
_____

Appeal from United States Bankruptcy Court
for the Southern District of Iowa - Des Moines
_____

Submitted:  July 8, 2020
Filed:  August 7, 2020
_____

Before SALADINO, Chief Judge, SCHERMER and SANBERG, Bankruptcy
Judges.
_____

SCHERMER, Bankruptcy Judge

Luxfer MEL Technologies (Luxfer) appeals the bankruptcy court's decision that payments to Luxfer were not protected by the ordinary course of business defense to a preference action. We have jurisdiction over this appeal from the final judgment of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons that follow, we remand.

## ISSUE

The issue on appeal is whether the bankruptcy court properly determined that preference payments did not qualify for the ordinary course of business defense. Because we cannot make this determination without additional explanation from the bankruptcy court, we remand this matter to the bankruptcy court.

## BACKGROUND

On September 13, 2016, Fansteel Foundry Corporation f/k/a Wellman Dynamics Corporation (Debtor) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Within 90 days of the bankruptcy filing, the Debtor made 27 payments to Luxfer totaling $2,529,733.82. It was undisputed that Luxfer's services were essential to the Debtor's operations.

Daniel Dooley, Trustee of the WDC Liquidation Trust (Trustee), is the plaintiff in this litigation seeking to avoid as preferences and recover payments made within 90 days of the Debtor's filing of its bankruptcy petition. Luxfer raised two affirmative defenses: (1) new value; and (2) ordinary course of business. After trial, the Trustee conceded that new value in the amount of $1,847,623.62 could be credited against the preference payments received by Luxfer. The bankruptcy court entered judgment in favor of the Trustee for the difference ($2,529,733.82 less $1,847,623.62), $682,110.20, plus interest.

## STANDARD OF REVIEW

"We review the bankruptcy court's findings of fact for clear error and conclusions of law de novo." *Official Plan Comm. v. Expeditors Int'l of Wash., Inc. (In re Gateway Pac. Corp.),* 153 F.3d 915, 917 (8th Cir. 1998) (citation omitted).

2

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494, 500 (8th Cir.1991) (quoting *United States v. United States Gypsum* Co., 333 U.S. 364, 395 (1948)).

## DISCUSSION

"In general, an avoidable preference is a transfer of the debtor's property, to or for the benefit of a creditor, on account of the debtor's antecedent debt, made less than ninety days before bankruptcy while the debtor is insolvent, that enables the creditor to receive more than it would in a Chapter 7 liquidation." *Cox v. Momar Inc. (In re Affiliated Foods S.W. Inc.)*, 750 F.3d 714, 717 (8th Cir. 2014) (citing 11 U.S.C. § 547(b)). Luxfer does not dispute that the Trustee made his prima facie case of establishing a preference. *See* 11 U.S.C. §547(g) ("[T]he trustee has the burden of proving the avoidability of a transfer under subsection (b) of [§547].").

The ordinary course of business defense is found in Bankruptcy Code §547(c)(2) which prohibits a trustee from avoiding transfers found to be preferences:

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was—
>
> > (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> >
> > (B) made according to ordinary business terms;

11 U.S.C. §547(c)(2). "The creditor must prove that the *transfer* either was made in the 'ordinary course of [its] business' with the debtor, *or* that it was made 'according to ordinary business terms.' " *Affiliated Foods S.W. Inc.*, 750 F.3d at718 (emphasis

3

and alteration in original).[1]  "[T]he creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of [§547]."  11 U.S.C. §547(g).

"There is no precise legal test which can be applied in determining whether payments by the debtor during the 90-day period were made in the ordinary course of business; rather, the court must engage in a peculiarly factual analysis."  *Gateway Pac. Corp.,* 153 F.3d at 917 (quoting *Lovett*, 931 F.2d at 497) (citation and quotation marks omitted).  "[T]he cornerstone of this element of a preference defense is that the creditor needs [to] demonstrate some consistency with other business transactions between the debtor and the creditor."  *Lovett,* 931 F.2d at 497 (citation and quotation marks omitted).  As stated by the Eighth Circuit:

> Other factors may be relevant in a particular case, such as whether the preferential transfer involved an unusual payment method or resulted from atypical pressure to pay.  But when those factors are absent, . . . . the analysis focuses on the time within which the debtor ordinarily paid the creditor's invoices, and whether the timing of the payments during the 90–day [preference] period reflected 'some consistency' with that practice.

*Affiliated Foods S.W. Inc.,* 750 F.3d at 719 (internal citations and quotation marks omitted).  "When late payments were the standard course of dealing between the parties, they are also the ordinary course of business during the preference period."  *Gateway Pac. Corp*., 153 F.3d at 917.

The 90 day preference period was from June 15, 2016 to September 12, 2016.  The time within which the debtor ordinarily paid the creditor's invoices prior to the preference period is referred to as the "baseline period."  The bankruptcy court appropriately adopted the Trustee's baseline period of June 1, 2012 through May 31,

---

[1] The Trustee does not dispute that the transfer was "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee."  11 U.S.C. §547(c)(2).

4

2015.  "To make a sound comparison, '[n]umerous decisions support the view that the historical baseline should be based on a time frame when the debtor was financially healthy.' " *Affiliated Foods S.W., Inc.,* 750 F.3d at 720 (quoting *Davis v. R.A. Brooks Trucking, Co., Inc. (In re Quebecor World (USA), Inc.),* 491 B.R. 379, 387 (Bankr.S.D.N.Y.2013)).  Luxfer proposed to the bankruptcy court a baseline period of April 2015 through July 2016, a time that includes approximately 45 days of the preference period.  The proposed baseline period by Luxfer would make it impossible to compare the preference and baseline periods.

The bankruptcy court then appropriately compared the average time from the date of invoice to payment during the baseline and preference periods.  The parties agree with the bankruptcy court's factual determination that during the preference period the average days from invoice to payment increased by 40 percent from the baseline average (from an average payment of 43 days from date of invoice during the baseline period to an average payment of 60 days from the date of invoice during the preference period).

Our difficulty with the bankruptcy court's decision is that it did not further identify its reasoning for holding that transfers in the amount of $682,110.20 were not made in the ordinary course.  The court stated that the Trustee's analysis provided a balanced approach and that it relied on the Trustee's determination that payments were made in the ordinary course if they were made 47 days or less after the invoice date.[2]  The court did not explain why it adopted 47 days as the cut-off period or how it arrived at that number.  The increase from the average time for payment during the baseline period of 43 days to the 47-day mark used by the bankruptcy court resulted in only 9 percent difference.  It seems improbable that an increase of time for payment of only 9 percent would be sufficient to set the cut-off for ordinary and non-ordinary course transactions.  This is particularly questionable when the time to payment for the 27 preferential payments had a range of 53 to 69

---

[2] In a footnote, the bankruptcy court stated that based on the dates when Luxfer received payments, the cut-off number was actually 52 days.  It is unclear what the 52-day number signifies and how it related to the baseline period.

days. None of the preference payments were made as quickly as 47 days, the length of time chosen by the trial court as the cut-off of ordinary course payment. Accordingly, since all 27 preference payments took longer than 47 days, none of them qualified as ordinary course payments. We doubt that an increase in the average length to payment of only 4 days (from 43 days during the baseline period to 47 days in the preference period) is substantial enough to take all 27 payments out of the ordinary course.

If, for example only, the court had determined 63 days was the cut-off (ordinary course) the increase of time to payment during the preference period would be from 43 days to 63 days in the preference period, demonstrating a significant change in the ordinary course dealings. Instead of a 9 percent difference there would be a 46 percent change from the baseline period.

According to Luxfer, the bankruptcy court erred because it did not apply a "peculiarly factual analysis" and it instead applied a precise legal test requiring only an "all math" analysis. Luxfer points to a four-factor test for determining ordinary course and argues that the bankruptcy court erred because it considered only the timing of payment. The Eighth Circuit has never adopted the four-factor test. But even in cases applying the four-factor test, "there is a general focus upon one of the factors and, if *any one* of the factors is compellingly inconsistent with prior transactions, the payment is deemed to be outside of the ordinary course of business between the parties." *Concast Canada, Inc. v. Laclede Steel Co. (In re Laclede Steel Co.)*, 271 B.R. 127, 131-132 (B.A.P. 8th Cir. 2002) (emphasis in original), *aff'd* 47 Fed. Appx. 784 (8th Cir. 2002) (per curiam) (unpublished)).

The focus of Luxfer's position is that the bankruptcy court failed to consider the change in invoice terms from 30 to 45 days in April 2015, before the preference period. We disagree. The court found that Luxfer imposed different payment terms during the parties' relationship, depending on creditworthiness, and it pointed to testimony from the record supporting its statement that the change in terms was irrelevant to the analysis because it was "less about its customary dealings with [the

6

Debtor] and more about Luxfer's efforts to increase its income stream." *Dooley v. Luxfer MEL Tech. (In re Fansteel Foundry Corp.),* Case No. 16-01825, Adv. No, 18-30042, slip op. at 5 (Bankr. S.D. Iowa Feb. 14, 2020).[3] Luxfer concedes that there was no change in the payment method or unusual collection activity during the preference period. We see no error by the court in focusing on the timing of payment. *See, e.g., Affiliated Foods S.W. Inc.,* 750 F.3d 714 (when other factors are absent, court focuses on consistency in time of payments); *Gateway Pac. Corp.,* 153 F.3d 915 (court disagreed with argument that other consistencies in relationship were sufficient to overcome evidence of significant change in payment); *Lovett*, 931 F.2d 494 (court focused on timing of payments and found unpersuasive other grounds relied upon by bankruptcy court for decision that payments were not ordinary course); *Laclede Steel Co.*, 271 B.R. 127 (excruciating lateness of payments outweighed relevance of other consistencies).

Relying on Federal Rule of Bankruptcy Procedure 8014(f), Luxfer submitted to us a letter citing *The Official Unsecured Creditors Comm. of Pester Refining Co. v. Blackburn, Inc. (In re Pester Refining Co.),* No. 87-0187, 1989 WL 1684542 (Bankr. S.D. Iowa May 31, 1989). Luxfer believes that case supports its argument that "when parties execute a new agreement prior to the preference period, but within the lookback period, the court should consider the new agreement as evidence establishing a new ordinary course of business between the parties." Rule 8014(f) concerns submission of "pertinent and significant authorities" that "come to a party's attention after the party's brief has been filed--or after oral argument but before a decision." FED. R. BANKR. P. 8014(f). *Pester Refining Co.* is neither pertinent nor significant.

*Pester Refining Co.* is not pertinent authority because it is factually distinct. The payment terms in *Pester Refining Co.* changed during the preference period, but Luxfer changed the Debtor's payment terms before the preference period. *In re*

---

[3] It is also not clear how the invoice terms could change the result when the parties never abided by those terms.

*Pester Refining Co.,* 1989 WL 1684542 at *1-2. And Luxfer and the Debtor changed only the time for payment of an invoice (45 days instead of 30), but the *Pester Refining Co.* "new agreement" also changed the required payment **method** to wire transfer instead of check and required the debtor to pay a **finance charge** on past-due invoices. *Id.* at 2.

*Pester Refining Co.* is also not significant authority. It is a 1989 non-binding trial level decision. Luxfer cites *Pester Refining Co.* for its agreement generally with the proposition from other cases that ordinary course may be established where the parties enter a new agreement prior to the preference period and then make payments pursuant to that agreement. *Id.* at *7. Importantly, *Pester Refining Co.* does not support Luxfer's position because the Debtor did not make payment to Luxfer in accordance with the new invoice terms. And the discussion of cases involving changes in payments prior to the preference period in *Pester Refining Co.* was dicta because the payment terms in *Pester Refining Co.* changed during the preference period and the court held that the parties' agreement was "not a valid 'new agreement.' " *Id.*

Luxfer also claims that we may rule in its favor on the §547(c)(2)(B) defense ("transfer was . . . made according to ordinary business terms") without a remand. 11 U.S.C. §547(c)(2)(B). As Luxfer pointed out, the bankruptcy court's decision did not address the §547(c)(2)(B) defense. We do not address this argument by Luxfer because it was not properly raised before us. Luxfer made this argument only in a footnote in its opening brief and in its reply brief in response to the Trustee's arguments.

## CONCLUSION

For the reasons stated, we remand this matter to the bankruptcy court to set forth the method by which it adopted 47 days as the ordinary course cut-off or, alternatively, determine which preferential transfers were made in the ordinary course. In addition, the adversary complaint seeks not only avoidance of preferential transfers under Bankruptcy Code §547, but also recovery under Bankruptcy Code

§550. Separately, the bankruptcy court's decision did not address recovery under §550. On remand, the bankruptcy court should determine the Trustee's entitlement to recovery under §550.

————————————————